UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**DAVID SHAWN MINZE,**
**INSTITUTIONAL ID NO. 02280832,**

   Petitioner,

v.                                                                 No. 4:22-cv-0484-P

**DIRECTOR, TDCJ-CID,**

   Respondent.

## MEMORANDUM OPINION AND ORDER

Petitioner David Shawn Minze, a state prisoner proceeding pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 to challenge his 2019 Parker County, Texas conviction. *See* ECF Nos. 1, 2. Respondent filed an answer with brief in support and relevant records. *See* ECF Nos. 9, 11. Minze filed a reply. *See* ECF No. 16. As explained below, the Court concludes that Minze's petition should be denied.

## BACKGROUND

In August 2019, a jury found Minze guilty of assault/family violence with a prior conviction. Minze pled true to two punishment-enhancement paragraphs, and the jury sentenced him to 70 years' imprisonment. Minze's conviction stems from, among other evidence, the live testimony of his common-law wife, Wendy Young. Young testified that Minze beat her with his belt, strangled her throat with a garment until she blacked out, and then burned her buttock with his belt buckle, which he had heated with a lighter.

The Court of Appeals for the Second District of Texas (COA) affirmed Minze's conviction. *See Minze v. State*, No. 02-19-00303-CR, 2021 WL 2006474 (Tex. App.—Fort Worth 2021, no pet.). Minze then filed a state habeas application in the trial court, challenging the validity of his conviction on four grounds, including the alleged ineffective assistance of his trial counsel, Harmony Schuerman. On February 2, 2022, the TCCA denied Minze's application without a written order on the

findings of the trial court without a hearing and its independent review of the record. *See* ECF No. 11-19.

Minze filed this federal petition on May 30, 2022. He challenges the legality of his conviction on two of the same grounds that he raised in his state habeas application. Respondent answers that Minze's claims have no merit. Minze filed a reply, insisting that he is entitled to federal habeas relief. After reviewing the parties' pleadings, relevant records, and applicable law, the Court, for the following reasons, agrees with Respondent and concludes that an evidentiary hearing is not necessary to resolve Minze's claims. The Court will address each claim below.

## LEGAL STANDARDS

### A. AEDPA

The Court must review Minze's claims under the highly deferential standard established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States;[1] or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2]

---

[1] A state-court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). A decision constitutes an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (explaining that a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

[2] "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Federal habeas relief is precluded even when

28 U.S.C. § 2254(d)(1)–(2).

Relief may not be granted under either subsection of § 2254(d) unless the petitioner can show that the state court's ultimate decision that a claim lacks merit was unreasonable. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). It is not enough to show that the state court's decision was incorrect; federal habeas relief is "not a substitute for ordinary error correction through direct appeal." *See Sanchez v. Davis*, 936 F.3d 300, 304–05 (5th Cir. 2019) (citing *Richter*, 562 U.S. at 102–103)). Rather, the petitioner must demonstrate that the state court's ultimate decision "was so lacking in justification that there was an error so well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. In other words, if there is any room for principled judicial disagreement on how a given claim should be adjudicated, then the petitioner is not entitled to relief. *See Sanchez*, 936 F.3d at 304.

This standard is intentionally "difficult to meet" and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102. AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Section 2254(d) was designed to confirm that state courts—not federal courts—are the principal forum for asserting constitutional challenges to state convictions and guard against only extreme malfunctions in the state criminal justice system. *See Richter*, 562 U.S. at 102–04.

When analyzing the reasonableness of a state court's ultimate decision that a claim lacks merit, the federal habeas court must (1) look to the state court's particular reasons for rejecting the claim; and (2) only consider the factual record that was before the state court when it adjudicated the claim on its merits. *See Wilson v. Sellers*, 584 U.S. 122,

---

the state court's factual determination is debatable. *Id.* at 303. State-court factual determinations are entitled to a "presumption of correctness" that a petitioner may rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This "deference extends not only to express findings of fact, but to the implicit findings of the state court." *Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018).

125 (2018); *see also Evans v. Davis*, 875 F.3d 201, 217 (5th Cir. 2017) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011)).

This is a straightforward inquiry when the most recent state court to reject the claim explains its decision in a reasoned opinion. *Wilson*, 584 U.S. at 125. In that situation, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable. *Id.*

The inquiry can be more exacting when the most recent state court to reject the claim does not explain its reasons for doing so.[3] Under those circumstances, a federal habeas court must "look through" the unexplained decision to the last related state-court decision that does provide reasons, if there is one. *Id.* at 125. If an earlier decision exists, the federal habeas court should presume that the unexplained state-court decision adopted the same reasoning, and then proceed with analyzing whether it was unreasonable.[4] *Id.*

However, when there is no earlier state-court opinion to look to, the federal habeas court: (1) assumes that the state court applied the proper federal law to the facts; and (2) then determines whether its ultimate decision was contrary to or an objectively unreasonable application of that law. *See Jordan v. Dretke*, 416 F.3d 363, 368 (5th Cir. 2005) (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)); *see also Thomas v. Vannoy*, 898 F.3d 561, 569 (5th Cir. 2018) (quoting *Evans*, 875 F.3d at 217). In making this determination, the federal habeas court may infer findings of facts necessary to support the state court's ultimate decision. *See Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003). Any such implied findings are presumed correct unless the petitioner presents clear and convincing evidence that demonstrates otherwise. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004).

---

[3] Section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits." *Richter*, 562 U.S. at 100. Even summary denials of relief are entitled to substantial deference. *Id.* at 100–01.

[4] The State may rebut this presumption by showing that the most recent state court's unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were argued or supported by the record that the state court reviewed. *See Sellers*, 138 S.Ct. at 1192.

## B. Ineffective Assistance of Counsel

To prevail on an IAC claim under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show (1) "counsel's performance was deficient;" and (2) "the deficient performance prejudiced the defense." *Meja v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 687).

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688). A court considering an IAC claim must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). This is a heavy burden that requires a "substantial," and not just a "conceivable," likelihood of a different result. *See Richter*, 562 U.S. at 112; *see also Pinholster*, 563 U.S. at 189.

"Surmounting *Strickland's* high bar is never an easy task." *Richter*, 562 U.S. at 105 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Even under de novo review, the standard for judging counsel's representation is a most deferential one. *Id.* Unlike a later-reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. *Id.* It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* The question is whether an attorney's representation amounted to incompetence under

5

"prevailing professional norms," not whether it deviated from best practices or most common custom." *Id*.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *Id*. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. *Id*. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. *Id*. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under Section 2254(d). *Id*. When § 2254(d) applies, the question is not whether counsel's actions were reasonable. *Id*. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id*. Additionally, if a petitioner fails to satisfy either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *See Strickland,* 466 U.S. at 697.

## ANALYSIS

### A. Ineffective Assistance of Counsel

Minze claims that, his trial counsel, Ms. Schuerman, was ineffective for failing to challenge for cause Juror No. 17, Vera Harris. Minze contends that Harris was biased and prejudiced against him. His claim stems from the following exchange that took place between Schuerman and Harris during voir dire.

**Schuerman**: When you consider the facts that Mr. Minze had a prior conviction of proof of guilt in this case, and – I know that's a – that's a tough question to ask because I know that we don't want to think we would, but I really need to know if that's something that you would consider. Can you tell me on this side?

**Harris**: I'm wrestling with it.

**Schuerman**: Okay. Could you please stand? Ms. Harris? Ms. Harris?

**Harris:** Yes.

**Schuerman:** Okay. Tell me about that.

6

| | |
|---|---|
| **Harris:** | People don't change. |
| **Schuerman:** | Okay. |
| **Harris:** | You are who you are at a young age unless something traumatic happens in your life, something really dynamic. |
| **Schuerman:** | Okay. So, what you're – and I'm not trying to put words in your mouth either. |
| **Harris:** | Uh-huh. |
| **Schuerman:** | But what you're saying is: Would you – would you be more likely to believe that Mr. Minze is guilty of this offense because he has been convicted of another offense? |
| **Harris:** | I'm afraid so. |
| **Schuerman:** | Is that a yes? |
| **Harris:** | I think the older I get the more judgmental I become. |
| **Schuerman:** | Right. |
| **Harris:** | Sorry. |
| **Schuerman:** | Me, too. |
| **Harris:** | Leopard don't change spots. |
| **Schuerman:** | I totally understand that. Anyone else? |

*See* ECF No. 11-2 at 104–106.

In conducting the deficient performance analysis in the context of counsel's failure to strike an allegedly partial juror, a court first evaluates whether the juror was actually biased. *Seigfried v. Greer*, 372 F. App'x 536, 539 (5th Cir. 2010) (citing *Virgil v. Dretke*, 446 F.3d 598, 607 (5th Cir. 2006)). The issue of juror bias is a factual finding. *Virgil*,

7

446 F.3d at 610 n. 52. The bias determination centers on a juror's own indication that she has "such fixed opinions that [she] could not judge impartially respondent's guilt" and whether "her views would prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instructions and oath." *See Seigfried*, 372 F. App'x at 539 (quoting *Patton v. Yount*, 467 U.S. 1025, 1035 (1984) and *United States v. Scott*, 159 F.3d 916, 925–26 (5th Cir. 1998)).

In *White v. Quarterman*, the Fifth Circuit discusses and distinguishes various juror bias cases. In determining whether a juror is biased, the circuit focuses and places great weight on the specific phrases and words that a juror uses in response to questions asked during voir dire. *See White v. Quarterman*, No. 05-51509, 2008 WL 1859628, at *3 (5th Cir. 2008) (collecting cases). For example, if a juror, in response to a question, explicitly and unambiguously states that he or she, for whatever reason, is "prejudiced" against the defendant or "unable to be fair and impartial," the circuit is more likely to find that a juror has shown bias. *See id.* However, if a juror's answers are vague and only hint at possible bias, the circuit will be less likely to find that a juror has shown bias. *Id.* Moreover, jurors cannot be expected to set aside their life experiences; merely expressing that a life experience shades one's view does not equate to bias. *Id.* (citing *Virgil*, 226 F.3d at 609).

Respondent answers that Minze's claim fails because he cannot show that the TCCA's denial of his claim was unreasonable. The Court agrees. As previously noted, the TCCA denied Minze's claims without a written order based on the trial court's findings without a hearing and on its own independent review of the record. Because the TCCA did not explain its decision in a written opinion, *Wilson* mandates that this Court must presume that the TCCA adopted the trial court's reasoning for denying Minze's claim and determine whether it was unreasonable.

Judge Craig Towson presided over Minze's trial and his state habeas proceedings. In denying this claim, Towson concluded that Minze could not satisfy either prong of *Strickland*. *See* ECF No. 11-20 at 278–87. Specifically, Towson concluded that (1) Schuerman's performance was not deficient for failing to identify or challenge an allegedly biased juror [Harris] for cause; and (2) Minze failed to establish any prejudice based

8

on Schuerman's failure to do so. *Id.* at 285-86. In reaching these conclusions, Towson found, among other things, that (1) the law regarding when prior convictions may and may not be considered against a defendant was not explained to the venire panel or [Harris]; (2) [Harris] did not state that she would be unable to follow the law or the court's instructions; (3) [Harris] displayed no bias or prejudice against [Minze]; (4) [Harris] displayed no bias or prejudice against any law that [Minze] was entitled to rely on; (5) [Harris] was not subject to a challenge for cause. *Id.* at 281.

To prevail on this IAC claim, Minze must show that the TCCA's application of *Strickland* to his claim was *unreasonable* (emphasis added*)*, not just incorrect. In denying Minze's claim, the TCCA presumably adopted Judge Towson's factual findings, including but not limited to the fact that Harris was not biased or prejudiced against Minze. Judge Towson's factual findings are presumed correct unless Minze presents clear and convincing evidence that demonstrates otherwise. *See Richards v. Quarterman*, 566 F.3d 553, 563 (5th Cir. 2009). Minze has not done so here. Instead, he merely disagrees with Judge Towson's factual findings, insisting that the underlying record supports his position.

Moreover, the Court has conducted an independent review of the state-court record. Harris never explicitly stated that she was prejudiced against Minze or that she could not be a fair and impartial juror. Additionally, Judge Towson later instructed the jury that it could only consider evidence of Minze's prior criminal conduct to determine his motive, opportunity, intent, preparation, knowledge, or identity in connection with the underlying offense and for no other purpose. *See* ECF No. 11-20 at 336–37. There is nothing in the record to indicate that Harris was unwilling or unable to understand or follow the law as instructed by Judge Towson.

Because Minze fails to show that the TCCA's finding that Harris was not biased or prejudiced against him was unreasonable, he, in turn, likewise fails to show that the TCCA's conclusion that Schuerman's performance was not deficient was unreasonable.

Even if Minze could establish deficient performance, he fails to demonstrate that the TCCA's conclusion that he failed to establish prejudice was unreasonable. Even if Harris were biased, Minze fails to show that there is a reasonable probability that, but for Harris's presence, the jury would have acquitted him. He merely speculates that it might have. Moreover, prejudice is not presumed under the factual circumstances presented here. *See Virgil*, 446 F.3d at 607 (citations omitted) (finding that the denial of the right to an impartial decisionmaker alone is insufficient to warrant a presumption of prejudice in the ineffective assistance of counsel context). Alternatively, because Minze cannot satisfy the deficiency prong of the *Strickland* test, the Court need not consider the prejudice prong. *See Strickland,* 466 U.S. at 697

Because Minze fails to demonstrate that the TCCA's application of *Strickland* to this claim was unreasonable, he is not entitled to relief on this ground.

## B. Trial Court Error

Minze also claims that the trial court erred by allowing Harris to serve on the jury, violating his constitutional right to a fair and impartial trial. Respondent answers that Minze's claim is not cognizable on federal habeas review because he procedurally defaulted it in state court. Minze does not address or refute Respondent's contention in his reply.

After reviewing the parties' pleadings, state-court record, and applicable legal authorities law, the Court agrees with Respondent. Because Minze procedurally defaulted this claim, it is not cognizable on federal habeas review.[5]

---

[5] Where a prisoner procedurally defaults his federal claim in the state habeas court, federal habeas review is barred unless he can demonstrate cause and prejudice. *See Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). To the extent Minze argues that his failure to object to Harris's presence on the jury is the result of Schuerman's ineffectiveness constitutes cause for his default, the Court disagrees. Counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation. *See Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000) (citing *Coleman*, 501 U.S. at 755). For the reasons previously stated, Minze fails to show that Schuerman was ineffective under *Strickland*.

## CONCLUSION

For these reasons and those stated in Respondent's answer, the Court **DENIES** Minze's petition. In addition, for the same reasons, the Court concludes that Minze has failed to show that jurists of reason would find it debatable whether his petition states a valid claim of the denial of a constitutional right and whether the Court was correct in its procedural ruling. The Court, therefore, **DENIES** a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**SO ORDERED** on this **13th day of February 2025.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE